Riley R. DAVISON, Respondent,

v.

William R. RODES and Violet L. Rodes, Appellants.

No. 22529.

Kansas City Court of Appeals.

Missouri.

Jan. 7, 1956.

Frank L. Cohn and Donald F. Price, Kansas City, for appellants.

J. H. Greene, Jr., Raytown, for respondent.

FRED H. MAUGHMER, Special Judge.

Plaintiff, as Lessee, petitioned for a declaratory judgment to establish his right to renew a five year lease on a store building in Raytown. The court entered judgment for plaintiff. By this judgment, the lease was interpreted as granting to plaintiff the right, privilege or option of renewing or extending the lease for an additional five years, and upon the same terms as provided for the first five year period. Defendants appealed.

The lease, a written instrument, was in evidence. It was captioned "Store Lease," contained numerous printed covenants and some typewritten provisions. The lease was dated March 20, 1951, and the term extended from April 1, 1951 to March 31, 1956. The document was drawn by Mr. Bonewits, defendants' attorney, and was signed in his office, but plaintiff was at the time, there represented by his attorney, Mr. Zimmerman.

Two typewritten clauses of the lease are in hot controversy and are set out verbatim. The Lessee agreed to pay rent, "Payable at the rate of one hundred twenty-five ($125.-00) dollars per month and when a shoe repair shop has been installed, said rent to be payable at the rate of one hundred fifty ($150.00) dollars per month." The second clause is the vital writing with which we are concerned and reads: "Lessor grants an option to release premises to Lessee on expiration of this lease."

No shoe repair shop was ever installed and plaintiff has paid rent at the rate of $125 per month. In the fall of 1955, he visited the defendant, Mrs. Rodes, who was spokesman and negotiator for defendants throughout. From her he sought and demanded an additional five year term and at the same monthly rental. Mrs. Rodes refused. She told plaintiff that a Mr. Albert Rosenthal would pay $250 per month, at which figure she offered to extend plaintiff's lease.

At the trial, defendants asserted that plaintiff, by his failure to install the shoe repair shop and thereafter pay additional rent, had violated the terms of the original lease, thereby forfeiting any entitlement he might have to rights or benefits thereunder. Defendants received the $125 monthly rent for nearly four years and never sought cancellation of the lease by reason of failure to install a shoe repair shop. The lease did not provide that plaintiff was to install such a shop, it merely set out that *when* he did, or as we interpret the clause "If he did," then the rent was increased by $25 each month thereafter. We find no violation here and rule this point against defendants.

Now, as to the last quoted clause from the lease, it is plaintiff's position that there was granted to him an option to renew the lease for a second five year period and upon exactly the same terms, including rental charge. Defendants contend that the option clause is vague and ambiguous, does not provide the terms for a renewal and should be construed as nothing more than an agreement on lessor's part to negotiate with lessee for a new lease at the end of the first period. Defendants and lessors further assert that to hold them bound for a second term would be, in effect, writing a new contract. They claim the parties never intended that plaintiff be given the right to a second five year term and for the same rent. They offered oral evidence as to the intention of the parties. The court heard this testimony, but in its judgment and decree, found against defendants on both interpretation of the written words in the lease and on the parol evidence as to the intention of the parties.

Mrs. Rodes, one of the defendants and her attorney, Mr. Bonewits, testified that before the signing, there was discussion of the renewal question, but that no positive agreement regarding the renewal rent or term was reached.

In American Press v. City of St. Louis, 314 Mo. 288, 284 S.W. 482, loc. cit. 487; the Supreme Court of Missouri said:

> "We have in this case a lease which is unilateral in its terms so far as the extension is concerned * * * It is well-established law that contracts which are optional in respect to one party are strictly construed in favor of the party that is bound and against the party in whose favor the option runs."

This court in Krall v. Light, 240 Mo.App. 480, 210 S.W.2d 739, loc. cit. 746, said:

> "Options for the renewal of leases or the purchase of real estate are usually strictly construed as against the person whose right it is to exercise the option."

Where parties have reduced their agreement to an unambiguous writing, the courts, through application of the parol evidence rule, have quite uniformly held that in the absence of fraud, duress, mistake or mental incapacity, oral testimony may not be received or considered, thereby substituting a new and different contract. This rule is one of substantive law and not a rule of evidence. 32 C.J.S., Evidence, § 851, p. 784; Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817.

We must first examine the written lease or agreement of the parties. Since no fraud, duress, mistake or mental incapacity was even suggested, then unless the written contract was ambiguous, we cannot go beyond or outside of it. We recite the crucial clause again: "Lessor grants an option to

release premises to lessee on expiration of this lease." This lease was written by a lawyer. We should seek to learn the full meaning of the words used therein. "Grant" is a generic term applicable to all transfers of real estate. A synonym would be "to give" or "surrender." The word "option" has legal significance. It means an exclusive privilege to accept or reject a continuing offer within a specified time. The word "release" was certainly not aptly used here. In its literal sense, it means "discharge." However, as used here, it must be ruled to mean "re-lease" or "lease again."

In 51 C.J.S., Landlord and Tenant, § 54, pp. 593–594, it is stated:

"It has been recognized that in many respects the words 'extension' and 'renewal' are of similar import, and that they are frequently used as being synonymous; and it has been said that the tendency of the courts seems to be to disregard any distinction between them. Some authorities have gone further and declared that there is no distinction or substantial difference between the terms." (American Press v. City of St. Louis, 314 Mo. 288, 284 S.W. 482.)

Continuing on the same subject, in 51 C.J.S., Landlord and Tenant, § 71, pp. 619, 620, we find this language:

"Except as otherwise agreed, however, a covenant to extend or renew, ordinarily imports a holding for the additional period on the same terms, conditions and essential covenants as those contained in the original lease * * *. In the absence of a provision specifying the duration of the new term, a covenant to renew or extend implies an additional term for the same period as the original lease * * *. A general covenant to extend or renew, which does not expressly set forth the rent for the additional period, has been held to imply a new term at the same rent."

In Bussen v. Del Commune, 239 Mo.App. 859, 199 S.W.2d 13, loc. cit. 22, the Supreme Court of Missouri struck down all technical distinctions between the words "renewal" and "extension" in renewal option rental agreements. The court said:

"Suffice it to say that the courts of this state are inclined to disregard the distinction between a renewal and an extension unless the execution of a new lease is specifically required, in which event the distinction is recognized, at least if the terms and conditions of the new tenancy are to differ materially from those of the old."

In Krall v. Light, 240 Mo.App. 480, 210 S.W.2d 739, 742, this court had for construction (with other points) a renewal clause in a 25 year lease, which read: "Privilege of renewal of lease at expiration, * * * is hereby granted party of second part by party of the first part." On page 746 of 210 S.W.2d of the opinion, the court said:

"Defendants say that the clause of the lease providing for a renewal thereof is wholly invalid for lack of certainty and definiteness."

Continuing on the same page:

"A general covenant to 'renew' implies a renewal on the same terms and for the same length of time as the original lease, but it does not give a further right to renew, (just one renewal). The covenant for renewal in this case is sufficiently certain to be enforceable. 32 Am.Jur. 807; 51 A.L.R. page 597, and authorities there cited."

The judgment for Plaintiff-Lessee was affirmed.

Counsel for both parties have invited our attention to the opinion of the Springfield Court of Appeals in Crane v. Berman, Mo. App., 297 S.W. 423, 424. On the facts, that case is not helpful as the renewal option clause there provided "Upon such terms as may be agreed upon between the parties hereto at or before the expiration of this lease." However, the court there did say

that it was not disposed to split hairs as to the meaning of terms, such as, to "renew" or to "extend" or to "rent."

We believe that the option granted plaintiff in the original lease by lessors, amounted to a privilege to renew for a second term upon expiration of the first period. The meaning of the word "release," as here used, has not been judicially defined in Missouri, or elsewhere, possibly because it never before was presented under a similar usage. However, we believe that "release" as herein used, means "re-lease" and we shall not quibble or set up technical connotations in meaning between the words "renew," "extend" or "re-lease," when used in a written lease renewal option clause. True, the option does not specifically provide the renewal rental or renewal time period, but we believe the authorities cited herein, lead to the conclusion that under such circumstances a holding for the additional period on the same terms and conditions is imported and implied.

In view of our holding as to the meaning and result of the renewal option as written in the original lease, it is unnecessary to either review or weigh the oral testimony heard below. Likewise, defendant's contention that the Statute of Frauds nullifies the option agreement, need not be discussed, since we hold that the written terms and conditions as set forth in the original lease became a part of the five year renewal.

The judgment is affirmed.

BROADDUS and CAVE, JJ., concur.