Ralph ALLMON, Appellant,

v.

Rose GATSCHET, James Gatschet, Charles Gatschet, J C R Investment Co., Inc., John Anderson, Annette Anderson, and Frank Sebree, Trustee, Respondents.

No. 53628.

Supreme Court of Missouri, Division No. 2.

Feb. 10, 1969.

C. John Forge, Jr., Independence, for appellant.

Robert H. Kendrick, Kansas City, for respondents Rose Gatschet, James Gatschet, Charles Gatschet, J. C. R. Investment Co., Inc.

Martin B. Dickinson, Kansas City, for respondents Anderson and Sebree.

STOCKARD, Commissioner.

By his action in equity plaintiff sought to set aside deeds to three tracts of real estate and the transfer of personal property used in the operation of a nursing home. The judgment of the trial court was for defendants and plaintiff has appealed.

In September 1960 plaintiff, a real estate broker, arranged for the sale of a tract of land located at 7505 E. 87th Street in Kansas City from a Dr. Warren to Mrs. Rose Gatschet who thereafter, with her sons James and Charles, operated what is known as the Blue Ridge Nursing Home. A part of the purchase price of this property consisted of a note executed by Mrs. Gatschet in the amount of $46,000 which was secured by a deed of trust on a piece of property located in Lawrence County, Missouri. We shall hereafter refer to the property on 87th Street as the Blue Ridge Nursing Home. This piece of property and two others, one located at 3405· Coleman Road, which we shall refer to as the Anderson property, and the other located in Fairwood subdivision, which we shall refer to as the Gatschet Home, comprise the three tracts involved in this suit.

Following the purchase by Mrs. Gatschet of the Blue Ridge Nursing Home, there were unsuccessful negotiations between Mrs. Gatschet and plaintiff concerning the formation of a corporation to acquire sufficient capital to build and operate a nursing home facility. No corporation was ever formed in which plaintiff was issued stock, because, as stated by James Gatschet, with each meeting plaintiff's share in the proposed corporation became larger and the share of the Gatschets became smaller. The materiality of these negotiations is not readily apparent, but at some time during or subsequent to them plaintiff became the owner of the note executed by Mrs. Gatschet in the amount of $46,000. In an attempt to collect the balance of the note plaintiff foreclosed on the land in Lawrence County which served as security for that note, and the land was sold for $100. The foreclosure costs exceeded $156, and after those costs were added to the balance due, and the sale price of $100 was deducted, there remained due on the note a balance of $34,975.32.

Mrs. Gatschet executed three warranty deeds, each dated April 24, 1963, purporting to convey the title of the three tracts of land, subject to prior deeds of trust on each, to "RCJ Corporation." These deeds were not notarized until September 24, 1963, and were recorded on separate days in December 1963. There was not then, and there has not since been, any corporation by the name of RCJ Corporation. However, on September 19, 1963, which was before the deeds were notarized and before they were recorded, a corporation was formed by the name of JCR Investment Co., Inc., with Mrs. Gatschet and her sons, James and Charles, each receiving three of the total of nine shares which were issued. In November 1963, after the deeds from Mrs. Gatschet to RCJ Corporation were executed and after the date of the notary acknowledgments, but before the deeds were recorded, Mrs. Gatschet executed a deed of trust on the Blue Ridge Nursing Home property to secure a note to

**72**

the LaMonte Community Bank. None of the deeds of trust executed by Mrs. Gatschet on the various tracts of land are challenged in this proceeding. Although in the brief of the Gatschets it is indicated that "scrivener error deeds" were executed at some subsequent time, no such deeds pertaining to the Blue Ridge Nursing Home and the Gatschet Home properties appear in the transcript.

James Gatschet testified in effect that prior to the formation of the JCR Investment Co., Inc., the nursing home business belonged to him, his mother and his brother in equal shares, and that although the record title to the tracts of land was in his mother, the tracts of land were also owned equally by them.

On June 15, 1965, a warranty deed was executed from "RCJ Corporation," signed by Mrs. Gatschet as president and James Gatschet as secretary, purporting to transfer the Anderson property to John Willard Anderson, Jr. and Annette Anderson. The deed had impressed thereon the corporate seal of "JCR Investment Co., Inc." The purchase price was $15,400, which was the reasonable market value of the property. From the money received by reason of this transaction a previous note secured by a deed of trust on the property was paid. The balance of the purchase price went to the JCR Investment Co., Inc.

On November 2, 1965 a judgment in the amount of $40,864.43 was obtained by plaintiff against Mrs. Gatschet on the note given by her when she purchased the Blue Ridge Nursing Home property. After a general execution was returned unsatisfied this suit was brought to set aside the three deeds whereby Mrs. Gatschet purported to transfer title to the three tracts to the RCJ Corporation, and also to set aside the deed purporting to be from the RCJ Corporation to Mr. and Mrs. John Anderson. In a second count of the petition, plaintiff sought to set aside the transfer of the business and personal property of the Blue

Ridge Nursing Home from Mrs. Gatschet to JCR Investment Co., Inc. On June 6, 1966, which was after this suit was filed, Mrs. Gatschet executed a quitclaim deed conveying the Anderson property to JCR Investment Co., Inc., and a quitclaim deed was executed on behalf of the JCR Investment Co., Inc. to Mr. and Mrs. Anderson. Each deed recited that it was executed to correct a "scrivener's error" in deeds "between the same parties" dated June 16, 1965.

Mr. and Mrs. Anderson, and Frank Sebree, trustee in a deed of trust executed by the Andersons on June 24, 1965, filed a counterclaim and a cross-claim in which they alleged that if the conveyance of the Anderson property by Mrs. Gatschet to RCJ Corporation was to a fictitious or nonexistent grantee, and the conveyance by RCJ Corporation to the Andersons was by a fictitious or nonexistent grantor, counterclaimants are entitled to have said instruments reformed to express the true intention of the parties to convey all the title of Mrs. Gatschet to the Andersons as of the date of record of the deed to the Andersons. The prayer of the counterclaim was that the trial court "reform the conveyances hereinbefore described, if they are found not to have conveyed good and merchantable title and all the title which the other defendants had at the date of delivery of said conveyances, to accomplish said result," and also that the court determine the title to the Anderson property and find that the Andersons are the sole owners thereof, subject only to the deed of trust of which Sebree is trustee.

The three Gatschets and JCR Investment Co., Inc., filed a reply in which they "admit that [Mr. and Mrs. Anderson and Sebree] are entitled to have the original instruments of conveyance reformed to express the true intention of the parties," and they denied that they claimed any interest in the Anderson property. *Plaintiff filed no reply.* We shall first dispose of the issues on this appeal pertaining to the Anderson property.

Civil Rule 55.01, V.A.M.R., provides that there *shall* be filed a reply "if the answer contains a counterclaim denominated as such," and Civil Rule 55.11 provides that averments in a pleading "to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleadings." The averments in the counterclaim, which were admitted by the failure of plaintiff to file a reply, would entitle the court to reform the deeds so as to carry out the intention of Mrs. Gatschet to transfer the title of the property to Mr. and Mrs. Anderson as of June 15, 1965, which was prior to the judgment obtained by plaintiff against Mrs. Gatschet.

Should it be contended that the issue of whether the Andersons were entitled to the requested equitable relief was tried by the implied consent of the parties within the meaning of Civil Rule 55.54, V.A.M.R., we reach the same result. The evidence clearly establishes that it was the intention of Mrs. Gatschet to transfer the title to the property to the Andersons on June 15, 1965, whether title was actually in her name, or in the name of RCJ Corporation or JCR Investment Co., Inc., as she apparently believed. The conveyance was for good and valuable consideration which was actually paid by the Andersons before plaintiff obtained his judgment against Mrs. Gatschet, and the reasonableness of the price is not challenged or questioned by plaintiff. Also, there is no evidence that the Andersons had any knowledge or should have known of a claim by plaintiff against Mrs. Gatschet or the property. Plaintiff seeks equitable relief by his petition, and when we balance the equities of plaintiff and the Andersons, see 27 Am. Jur.2d Equity § 107, they preponderate in favor of the Andersons. The effect of the judgment of the trial court was to grant the equitable relief requested by the Andersons and Sebree, and we affirm.

We turn now to the merits of plaintiff's action to set aside the deeds from Mrs. Gatschet to RCJ Corporation pertaining to the Blue Ridge Nursing Home and Gatschet Home properties.

In addition to the facts as above stated, the trial court found that James Gatschet "testified" that he, his brother Charles and his mother each "were and are the beneficial owner of one-third interest in the nursing home business operated by the Gatschets, in connection with which they owned all the real estate in question," and that "each of the three now owns three shares of stock in JCR Investment Company, Inc." The court then found that "plaintiff failed to sustain the burden of denying such ownership by Charles and James." The court also found: "The evidence fails to show any conveyance by Rose Gatschet whereby she divested herself of any asset to which she was beneficially entitled, other than for valuable consideration. On the contrary, the evidence shows that defendant Rose Gatschet still owns beneficially whatever property she formerly owned except such as may have been conveyed or transferred for full and adequate as well as valuable consideration." We have some difficulty in determining precisely what is meant by these findings, but in a case of this kind which was tried to the court in equity we review the record de novo and determine the credibility, weight and value to be accorded to the testimony and other evidence, and we arrive at our own conclusions based upon the entire record. However, we should not set aside the judgment unless clearly erroneous. Civil Rule 73.01(d), V.A.M.R.; Chailland v. M.F.A. Mutual Insurance Company, Mo., 375 S.W.2d 78; Kelso v. Kelso, Mo., 306 S.W.2d 534, 71 A.L.R.2d 258.

Our conclusion from a consideration of all the evidence is that as between Mrs. Gatschet and her two sons they considered that they each owned one third of the nursing home business, and that even though the record title of the tracts of land was in Mrs. Gatschet, the tracts of land were assets of the business. By the deeds dated April 24, 1963, in which the

RCJ Corporation was named as grantee it was intended that title was to be transferred to a corporation to be formed in which Mrs. Gatschet and her two sons each owned one third of the shares of stock. Although no such corporation was in existence on April 24, 1963, such a corporation by the name of JCR Investment Co., Inc., was organized on September 19, 1963. Five days later, in an effort to complete the transfer to the corporation, the deeds were notarized and subsequently recorded. In consideration of the receipt by the JCR Investment Co., Inc., of the interests of Mrs. Gatschet and her two sons, three shares of stock, one third of the total shares, were issued to each. Although we think the facts fairly justify the above findings as to the intention of the parties, the record before us does not show that necessary procedures were followed to carry out that intention.

■ It is the general rule that a valid deed of conveyance requires a grantee in esse who is capable of taking and holding title to the property at the time of the conveyance, 23 Am.Jur.2d Deeds § 48; Krall v. Light, 240 Mo.App. 480, 210 S.W.2d 739; Douthitt v. Stinson, 63 Mo. 268, although equitable rights may result in favor of a subsequently formed corporation named as a grantee. White Oak Grove Benevolent Society v. Murray, 145 Mo. 622, 47 S.W. 501. In this case title did not pass to the RCJ Corporation by the deeds of April 24, 1963 because there was no such grantee in existence capable of receiving and holding title. In addition, it cannot be said that on April 24, 1963, title passed to the JCR Investment Co., Inc., on the basis that the difference in names was the result of a scrivener's error. JCR Investment Co., Inc., was not then in existence. However, it appears that the basis of the trial court's finding is that title to the tracts of land was transferred to JCR Investment Co., Inc., in consideration of the receipt by Mrs. Gatschet and each of her two sons of three shares of stock. If it can be held that this occurred it would have to be based on the theory that after JCR Investment Co., Inc., was formed, the notarization of the deeds five days later was accompanied by a delivery, and that the discrepancy in the name of the grantee was a scrivener's error which did not prevent the determination of the identity of the real grantee. The difficulty with this is that it is based on speculation and conjecture, and not on the evidence.

From the record before us we cannot determine that title to the two tracts of land is in JCR Investment Co., Inc., and in that event we cannot rule that there was a conveyance from Mrs. Gatschet for good and valuable consideration, as apparently the trial court held. However, if the deeds are inoperative, and based on the record before us we must so hold, record title is still in Mrs. Gatschet. In that event to pursue his legal remedy plaintiff does not need the equitable relief of having the deeds set aside. We do not rule that in any further proceeding the Gatschets cannot establish that there was a valid conveyance to the JCR Investment Co., Inc., for good and valuable consideration. We hold only that the record before us does not authorize such a finding.

Defendants Anderson and Sebree filed in this court a motion to dismiss plaintiff's appeal as to them on the basis it is now moot because plaintiff did not file within three years after the rendition of the judgment against Mrs. Gatschet a writ of scire facias to revive the lien, and in proof thereof they filed an affidavit of the clerk of the circuit court of Jackson County. In view of the result reached on this appeal as to the Anderson property we need not determine if we can and should take into consideration facts occurring subsequent to the time the appeal was taken. In other words, the merits of the motion are now moot.

The judgment as to John Anderson, Annette Anderson and Frank Sebree, trustee

is affirmed, and the remainder of the judgment is reversed and the cause remanded.

BARRETT, C., not sitting.

PRITCHARD, C., concurs.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

FINCH, P. J., and DONNELLY and HOLMAN, JJ., concur.

MORGAN, J., not participating because not a member of the Court when case was submitted.