**UNION CENTER REDEVELOPMENT CORPORATION,**
Plaintiff-Respondent,

v.

**Harriett Woestman LESLIE, et al.,**
Defendants-Appellants.

No. 52188.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 16, 1987.

Alan E. Popkin, Pat L. Simons, St. Louis, for defendants-appellants.

Theodore D. Ponfil, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This matter is before the court on appeal from the March 27, 1986, July 24, 1986 and August 28, 1986 orders and judgments of the Circuit Court of the City of St. Louis, Missouri, the Honorable Jean C. Hamilton, Judge. On March 27, 1986, Judge Hamilton denied Appellants' Motion to Dismiss Appellee's [1] First Amended Petition and their challenge to the substitution of Union Center Redevelopment Corporation as plaintiff. On July 24, 1986, Judge Hamilton entered judgment in favor of respondent and against appellants. On August 28, 1986, Judge Hamilton awarded respondent attorney's fees of Twenty-five Thousand Dollars ($25,000).

On or about June 1, 1891, appellants' predecessors in interest, John and Melinda Woestman (Woestman), and respondent's predecessor in interest, Terminal Railroad Association of St. Louis (Terminal), entered into a lease (the "Lease") whereby Woestman leased to Terminal, its successors and assigns, certain real property located in the City of St. Louis. This Lease was duly recorded in Book 1056, Page 252 of the Recorder of Deeds in the City of St. Louis. Under the terms of the Lease, Woestman leased the aforesaid real property to Terminal "to Have And To Hold the same together with the privileges and appurtenances thereunto appertaining and belonging unto said Lessee, its successors and assigns, for and during the full term of ninety-nine (99) years from the first (1st) day of June, eighteen hundred and ninety-one (1891),

1. A designation usually preserved for federal court appellate practice.

and thereafter renewable forever upon the same terms and conditions."

On August 10, 1984, respondent sent a notice of renewal of Lease to appellants whereby respondent exercised its right to renew the Lease for an additional ninety-nine (99) years commencing June 1, 1990, all upon the same terms and conditions as contained in the Lease. On January 18, 1985 attorney for appellants notified respondent that he believed the attempted renewal to be invalid.

On August 9, 1985, St. Louis Station Associates, a Missouri limited partnership, and Oppenheimer Gateway Partners, Inc., the sole general partner in St. Louis Station Associates, brought an action seeking a judicial declaration that respondent's notice of renewal was valid and effective. At the time of filing suit, St. Louis Station Associates was the sub-lessee of the aforesaid real property under an agreement with respondent, and was, therefore, in lawful possession of said property. St. Louis Station Associates owns in excess of seventy-five percent of the outstanding stock of respondent. At the present time a project valued at approximately $15,000,000.00 has been constructed on the St. Louis Union Station properties of which the leasehold estate created by the lease is an integral part.

On January 10, 1986 an Amended Petition was filed. The Amended Petition added respondent as plaintiff and dropped St. Louis Station Associates and Oppenheimer Gateway Partners, Inc. as plaintiffs.

On July 12, 1986, the parties submitted this matter to the court upon stipulated facts for a final determination of the case on its merits. On July 24, 1986, judgment was entered in favor of respondent declaring that respondent, its successors and assigns have the sole and exclusive right to possession, use and enjoyment of the aforesaid real property, together with an option to renew the Lease forever upon the same terms and conditions, and that respondent had legally and effectively exercised that option for a period of ninety-nine (99) years, commencing June 1, 1990. On August 28, 1986, the court heard testimony

and argument regarding respondent's attorney's fees and entered an award in favor of respondent for attorney's fees and costs in the amount of $25,000.00.

Appellants offer three points on appeal. First, the trial court erred in denying lessor's motion to dismiss, because the court's January 10, 1986 order allowing Union Center Redevelopment Corporation to be substituted as plaintiff and to file an amended petition resulted in a new lawsuit. Second, that the trial court erred in entering judgment in favor of lessee because the terms of the lease were ambiguous and could only be interpreted in conjunction with the agreement to lease. Third, the court abused its discretion in awarding respondent attorney's fees and cost of $25,000.00.

Rule 52.06 provides, "Parties may be dropped or added by order of court on motion of any party or of its own initiative at any stage of the action on such terms as are just." Appellants argue that this rule is inapplicable in this case because the amended petition constituted a new suit and is governed by Rule 53 and Rule 54. We cannot agree.

■ Whether to permit a particular amendment to a pleading is within the sound discretion of the trial judge and should be done liberally. *Pender v. Foeste,* 329 S.W.2d 656 (Mo. 1959). The law in Missouri for nearly a century is a new action is not commenced by substituting the party having the legal right to sue instead of another party improperly named. *Lilly v. Tobbein,* 103 Mo. 477, 15 S.W. 618 (1891); *Cytron v. St. Louis Transit Co.,* 205 Mo. 692, 104 S.W. 109 (1907); *Beger v. Meara,* 351 Mo. 64, 171 S.W.2d 650 (1943). This rule is especially true where the subject matter of the suit and the issues to be tried are unchanged. *Lilly* 15 S.W. at 621.

■ In the present case, the original petition and the amended petition are exactly the same except for the change of parties. At all times appellant was aware of the subject matter and the issues raised by the declaratory judgment. Further, there has been no showing by appellants that they

have been prejudiced by the amended petition.

We therefore can not find that the trial judge abused her discretion by allowing the petition to be amended.

Appellants next argue that the lease is ambiguous as to the amount of rent payable during any renewal term. The relevant portion of the lease provides that the lease is "renewable forever upon the same terms and conditions."

■ A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms. *Merz v. First National Bank of Franklin County*, 682 S.W.2d 500, 502 (Mo.App.1984). Moreover, an ambiguity does not arise merely because the parties disagree as to how the contract should be construed. *Id.*

■ In regard to renewal clauses in lease agreements, it has generally been held that a renewal clause is capable of enforcement only if it is certain as to both the renewal term and the rent to be paid, and if the court can determine what has been agreed upon. *Rosenberg v. Gas Service Company*, 363 S.W.2d 20 (Mo.App. 1962). However, renewal clauses which only specify that there exists an option to release the premises upon the termination of the lease have been upheld to be enforceable. *Davison v. Rodes*, 299 S.W.2d 591 (Mo.App.1956). In *Davison* it was argued that a lease provision providing that "lessor grants an option to release the premises to lessee on expiration of the lease" was vague and ambiguous. The court held while the option does not specifically provide the renewal rental or renewal time period it would be imported and implied that the renewal would be on the same terms and conditions as the lease.

In the present case, the terms of the renewal option are unambiguous. No other meaning can be gotten from the language of the option other than that the parties intended the renewal of the lease to be under the same terms and conditions as the original lease. The renewal option would surely fall within the *Davison* rule and it would be implied that the parties intended to renew the lease under the same terms and conditions as the original lease.

Appellants argue that we should look outside the lease agreement to an agreement to lease, entered into three weeks before the lease, which they feel better states the intentions of the parties. This argument is without merit. We cannot go beyond the scope of the unambiguous lease. It is a general rule of contract law that once parties reduce an agreement to an unambiguous writing, a court may not look beyond the terms of the contract itself to determine the right of the parties. *Clayton Brokerage Company of St. Louis, Inc. v. Raleigh*, 679 S.W.2d 376 (Mo. App.1984). If the parties had a different intention than the one expressed in the lease they certainly would have included it in the lease.

Appellants' final contention is in. four parts. First appellants argue that attorney's fees of $25,000.00 are exorbitant under the circumstances.

■ RSMo Section 527.100 (1986) provides, "In any proceeding under Sections 527.010 to 527.130 the court may make such award of costs as may seem equitable and just." Costs under 527.100 may include attorney's fees. *Labor's Educational and Political Club—Independent v. Danforth*, 561 S.W.2d 339 (Mo. banc 1977); *Bernheimer v. First National Bank of Kansas City*, 359 Mo. 1119, 225 S.W.2d 745 (1949). Awards of attorney's fees are left to the broad discretion of the trial court and will not be overruled except for an abuse of discretion. *Geary v. Geary*, 697 S.W.2d 318 (Mo.App.1985). Furthermore, courts are held to be experts on attorney's fees. *Id.* Factors that a judge should use to determine the reasonable value of legal services include: time spent, nature and character of services rendered, nature and importance of the subject matter, degree of responsibility imposed on the attorney, value of property or money involved, degree of professional ability required and the result. *Ozark Production Credit Associa-*

*tion v. Walden*, 695 S.W.2d 919 (Mo.App. 1985).

■ Based on these authorities, we can not find any abuse of discretion on the part of the trial judge. There is no question that the rates charged and the amount of time spent on the case were accurate. Appellants concede this point. Moreover, given the level of experience and skill needed to answer the complex legal issues involved in the case, the rates were reasonable. The only objection made by appellants was that some work may have been duplicated by some of the firm's associates. The record adequately reflects that the trial judge took this factor into consideration when determining the amount of the fee.

■ Appellants' second point is that respondent should not be able to collect attorney's fees in this case because they initiated the lawsuit. This point is devoid of merit. It is a well settled point in Missouri law that plaintiffs in a declaratory judgment action may collect attorney's fees. *Von Seggern v. 310 West 49th St., Inc.*, 631 S.W.2d 877 (Mo.App.1982); *Preferred Risk Mut. Ins. Co. v. Main*, 295 F.Supp. 207 (D.C.Mo.1968).

■ Appellants' third point is that respondent should not be able to collect attorney's fees because they were in a better position to bear the cost than appellants. Appellants argue that the court should have considered the relative financial positions of the parties. Appellants cite *Bray v. Bray*, 629 S.W.2d 658 (Mo.App.1982) and *In re Marriage of B___ A___ S___*, 541 S.W.2d 762 (Mo.App.1976) as authority for this point. However, these cases are not applicable in this situation. Those cases are interpreting RSMo Section 452.355 which requires the judge to consider the financial resources of the parties in domestic relations cases. Under RSMo Section 527.100 cost are awarded in a way that is "equitable and just." Given the rights of the parties and the amount of financial interest involved in this case, we can find no abuse of discretion on the part of the trial judge.

■ Finally, appellants argue that the attorney's fees should not be awarded because respondent's law firm had a financial interest in the lessee. The record indicates that three or four partners in the firm had a "very minimal interest ... in one of the entities that has an interest in the Union Station." Appellants contend that because of this interest too much time was put into the case. The record reflects that the trial judge was aware of what transpired during the case. Further there has been no showing that this interest directly affected how the law firm litigated the matter. The law firm represents all of St. Louis Union Station's legal affairs. It would seem only reasonable that the firm would put forth a great deal of effort in order to maintain a valuable client.

We can find no abuse of discretion on the part of the trial judge in awarding attorney's fees to plaintiff.

Judgment of the trial court is affirmed.

CRANDALL and KAROHL, JJ., concur.